James E. Cecchi
Donald A. Ecklund
**CARELLA, BYRNE, CECCHI, OLSTEIN,**
  **BRODY & AGNELLO P.C.**
5 Becker Farm Road
Roseland, NJ  07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com
decklund@carellabyrne.com

Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

Howard G. Smith
**LAW OFFICES OF HOWARD G. SMITH**
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff David College*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID COLLEGE, Individually and On Behalf of All Others Similarly Situated,<br><br>                        Plaintiff,<br><br>          v.<br><br>SYNCHRONOSS TECHNOLOGIES, INC., STEPHEN G. WALDIS, RONALD HOVSEPIAN, KAREN L. ROSENBERGER, and JOHN FREDERICK, | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND DEMAND FOR JURY TRIAL** |

Plaintiff David College ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Synchronoss Technologies, Inc., ("Synchronoss" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Synchronoss; and (c) review of other publicly available information concerning Synchronoss.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that acquired Synchronoss' securities between May 5, 2016, and April 27, 2017, inclusive (the "Class Period"), against the Defendants,[1] seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Synchronoss, purportedly provides mobile solutions for Service Providers and Enterprise through scalable software solutions and platforms.  The Company claims it simplifies the creation and management of customer and employee experiences associated with identity, cloud, messaging, applied analytics, and secure mobility.

3.      On April 27, 2017, the Company issued a press release entitled "Synchronoss Announces Management Changes; Company Issues Preliminary First Quarter 2017 Results." Therein, the Company disclosed that it expected "total revenue for the first quarter of 2017 to be $13 million to $14 million less than the company's previously announced guidance" and that it expected operating margins of 8% to 10% which was also less than previously announced guidance.  The Company stated that it was "disappointed with [its] Q1 performance in this first quarter following our acquisition of Intralinks."  The Company further disclosed that its Chief Executive Officer ("CEO"), Ronald Hovsepian, and its Chief Financial Officer ("CFO"), John Frederick were leaving the Company.

---

[1] "Defendants" refers to Synchronoss Technologies, Inc., Stephen G. Waldis, Ronald Hovsepian, Karen L. Rosenberger, and John Frederick, collectively.

4.     On this news, the Company's stock price fell $11.33 per share, or 46%, to close at $13.29 per share on April 27, 2017, on unusually heavy trading volume.

5.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the newly-acquired Intralinks was underperforming; (2) that the Company's integration of other acquisitions was underperforming; (3) that the Company was facing serious hurdles integrating, and capitalizing on, its newly acquired companies; (4) that, as such, the Company's guidance was overstated; and (5) that, as a result of the foregoing, Defendants' statements about Synchronoss' business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's principal executive offices are located in this Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities

exchange.

## **PARTIES**

11.    Plaintiff David College, as set forth in the accompanying certification, incorporated by reference herein, purchased Synchronoss securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.    Defendant Synchronoss Technologies, Inc. is incorporated in Delaware and its headquarters are in Bridgewater, New Jersey.  Synchronoss' common stock trades on the NASDAQ Stock Market ("NASDAQ") under the symbol "SNCR."

13.    Defendant Stephen G. Waldis ("Waldis") was the CEO of Synchronoss from prior to the beginning of the Class Period until January 19, 2017.

14.    Defendant Ronald Hovsepian ("Hovsepian") was the CEO of Synchronoss from January 19, 2017, through the end of the Class Period.

15.    Defendant Karen L. Rosenberger ("Rosenberger") was the CFO of Synchronoss from prior to the beginning of the Class Period until February 27, 2017.

16.    Defendant John Frederick ("Frederick") was the CFO of Synchronoss from February 27, 2017 through the end of the Class Period.

17.    Defendants Waldis, Hovsepian, Rosenberger, and Frederick (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Synchronoss' reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false

statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.    Synchronoss, purportedly provides mobile solutions for Service Providers and Enterprise through scalable software solutions and platforms.  The Company claims it simplifies the creation and management of customer and employee experiences associated with identity, cloud, messaging, applied analytics, and secure mobility.

### Materially False and Misleading Statements Issued During the Class Period

19.    The Class Period begins on May 5, 2016.  On that day, the Company issued a press release entitled "Synchronoss Technologies, Inc. Announces Strong First Quarter Results." Therein, the Company, in relevant part, stated:

> **BRIDGEWATER, NJ – May 5, 2016 –**   Synchronoss Technologies, Inc. (NASDAQ: SNCR), the leader in mobile cloud innovation and software-based activation for mobile carriers, enterprises, retailers and OEMs around the world, today announced financial results for the first quarter of 2016.
>
> "We are very proud of the Synchronoss team for starting 2016 with a strong first quarter and healthy momentum heading into the rest of the year," said Stephen G. Waldis, Founder and Chief Executive Officer of Synchronoss. "Cloud services were robust this quarter, as increasing subscriber growth on our core customer base is laying the groundwork for incremental cloud opportunities both domestically and internationally over the next 12 to 18 months.  We have a proven history of executing, launching, and scaling new offerings and leveraging technology opportunities into something that becomes much bigger as we have exhibited to our customers, partners, and investors over the years."
>
> **Financial Highlights for the First Quarter of 2016:**
>
> **Non-GAAP**
>
> - **Total Revenue**: $145.6 million compared to $133.1 million in the first quarter of 2015.
>
> - **Gross profit**: $85.2 million compared to $80.9 million in the first quarter of 2015.
>
> - **Operating Income**: $33.2 million compared to $34.9 million in the first quarter of 2015.

- **Net Income attributable to Synchronoss**: $23.0 million compared to $22.3 million in the first quarter of 2015.

- **Earnings per Diluted Share**: $0.49 compared to $0.49 in the first quarter of 2015.

- **Operating Cash Flow**: $37.1 million compared to $5.4 million in the first quarter of 2015.

**GAAP**

- **Total Revenue**: $142.7 million compared to $132.9 million in the first quarter of 2015.

- **Gross profit**: $74.4 million compared to $79.3 million in the first quarter of 2015.

- **Operating Income**: ($4.7 million) compared to $18.3 million in the first quarter of 2015.

- **Net Income attributable to Synchronoss**: ($7.3 million) compared to $10.6 million in the first quarter of 2015.

- **Earnings per Diluted Share**: ($0.17) compared to $0.23 in the first quarter of 2015.

- **Operating Cash Flow**: $37.7 million compared to ($0.1 million) in the first quarter of 2015.

A reconciliation of GAAP to non-GAAP results has been provided in the financial statement tables included in this press release. An explanation of these measures is also included below under the heading "Non-GAAP Financial Measures."

"We are pleased with our strong financial and operational performance to kick off 2016, particularly our ability to generate strong free cash flow," said Karen L. Rosenberger, Chief Financial Officer and Treasurer. "We believe our ability to balance growth and profitability, while investing in our enterprise and international initiatives well positions Synchronoss heading into the rest of 2016."

**First Quarter and Recent Business Highlights:**

- Cloud Services revenue accounted for $84.3 million of non-GAAP revenue, representing approximately 58% of total non-GAAP revenue and growing 18% on a year-over-year basis.

- Expanded our activation business with AT&T through our DIRECTV

deal.

- On target with the beta version of our Enterprise solution launched in April with general availability expected in early June.

- Free cash flow of $24 million delivered in the quarter as this continues to be a major focal point of the company.

- Announced $100 million share buyback program with $16.6 million completed in the quarter.

- Completed the acquisition of privately held OpenWave Messaging to enhance our international go-to-market strategy.

20.    On May 10, 2016 the Company filed its quarterly report on Form 10-Q for the 2016 fiscal first quarter.  The Form 10-Q was signed by Defendants Waldis and Rosenberger, and reaffirmed the financial results announced in the press release issued on May 5, 2016.

21.    On August 3, 2016, the Company issued a press release entitled "Synchronoss Technologies, Inc. Announces Strong Second Quarter Results."  Therein, the Company, in relevant part, stated:

**BRIDGEWATER, NJ**  –**August 3, 2016** –  Synchronoss Technologies, Inc. (NASDAQ: SNCR), the leader in mobile cloud innovation and software-based activation for mobile carriers, enterprises, retailers and OEMs around the world, today announced financial results for the second quarter of 2016.

"We are very proud of the Synchronoss team for delivering a healthy second quarter with momentum especially around cloud heading into the rest of the year", said Stephen G. Waldis, Founder and Chief Executive Officer of Synchronoss. "Cloud was strong this quarter, as solid subscriber growth in our core customer base is setting the stage for incremental cloud opportunities while investments in the enterprise initiatives are already generating significant customer activity in the field. We are continuing to execute on our long-term strategy which is laying the foundation for the future growth of Synchronoss."

**Financial Highlights for the Second Quarter of 2016:**

- **Total Revenue:** $157.6 million GAAP compared to $137.8 million in the second quarter of 2015.  $161.5 million non-GAAP compared to $137.9 million in the second quarter of 2015.

- **Gross profit:** $86.1 million GAAP compared to $82.9 million in the second quarter of 2015.  $96.9 million non-GAAP compared to $85.4 million in the second quarter of 2015.

- **Operating (Loss) Income:** ($3.5 million) GAAP compared to $23.6 million in the second quarter of 2015. $37.3 million non-GAAP compared to $40.2 million in the second quarter of 2015.

- **Net (Loss) Income attributable to Synchronoss:** ($4.4 million) GAAP compared to $15.2 million in the second quarter of 2015. $26.9 million non-GAAP compared to $26.0 million in the second quarter of 2015.

- **Earnings (Loss) per Diluted Share:** $(0.10) GAAP compared to $0.33 in the second quarter of 2015. $0.57 non-GAAP compared to $0.56 in the second quarter of 2015.

- **Operating Cash Flow:** $33.7 million GAAP compared to $62.6 million in the second quarter of 2015. $33.7 million non-GAAP compared to $60.6 million in the second quarter of 2015.

A reconciliation of GAAP to non-GAAP results has been provided in the financial statement tables included in this press release. An explanation of these measures is also included below under the heading "Non-GAAP Financial Measures."

"We are pleased with another quarter that exceeded our expectations, particularly our ability to deliver strong top-line growth," said Karen L. Rosenberger, Chief Financial Officer and Treasurer. "We believe our ability to drive growth, while investing in our enterprise and international initiatives positions Synchronoss well heading into the second half of 2016 and beyond."

**Second Quarter and Recent Business Highlights:**

- Cloud Services revenue accounted for $95.2 million of non-GAAP revenue, representing approximately 59% of total non-GAAP revenue and growing 33% on a year-over-year basis.

- Launched the general availability of our Enterprise Secure Mobility Platform (SMP) in June.

- Free cash flow of $20 million delivered in the quarter generating free cash flow continues to be a major focal point of the Company.

- Share repurchases of $23.4 million completed in the quarter.

- Held our annual analyst day in NYC, outlining the Company's core strategic and growth initiatives.

22.    On August 4, 2016 the Company filed its quarterly report on Form 10-Q for the 2016 fiscal second quarter. The Form 10-Q was signed by Defendants Waldis and Rosenberger,

and reaffirmed the financial results announced in the press release issued on August 3, 2016.

23.     On November 7, 2016, the Company issued a press release entitled "Synchronoss Technologies, Inc. Announces Strong Third Quarter Results."  Therein, the Company, in relevant part, stated:

**BRIDGEWATER, NJ –November 7, 2016** – <u>Synchronoss Technologies, Inc.</u> (NASDAQ: SNCR), the leader in mobile cloud innovation and software-based activation for mobile carriers, enterprises, retailers and OEMs around the world, today announced financial results for the third quarter of 2016.

"We are very proud of the Synchronoss team for delivering a strong third quarter with significant momentum around cloud and enterprise heading into year end and 2017," said Stephen G. Waldis, Founder and Chief Executive Officer of Synchronoss. "Cloud was very strong this quarter with both new and existing customers, as solid subscriber growth and expanded cloud initiatives in our core customer base set the stage for the next chapter of growth at Synchronoss."

**Financial Highlights for the third Quarter of 2016:**

- **Total revenue:** $176.4 million GAAP compared to $150.9 million in the third quarter of 2015. $181.0 million non-GAAP compared to $151.3 million in the third quarter of 2015.

- **Gross profit:** $99.2 million GAAP compared to $87.4 million in the third quarter of 2015. $109.1 million non-GAAP compared to $92.1 million in the third quarter of 2015.

- **Operating income:** $13.2 million GAAP compared to $22.3 million in the third quarter of 2015. $46.5 million non-GAAP compared to $43.2 million in the third quarter of 2015.

- **Net income attributable to Synchronoss:** $7.7 million GAAP compared to $9.6 million in the third quarter of 2015. $32.5 million non-GAAP compared to $27.1 million in the third quarter of 2015.

- **Earnings per diluted share:** $0.16 GAAP compared to $0.21 in the third quarter of 2015. $0.68 non-GAAP compared to $0.58 in the third quarter of 2015.

- **Operating cash flow:** $(17.7) million GAAP and non-GAAP compared to $14.1 million in the third quarter of 2015.

A reconciliation of GAAP to non-GAAP results has been provided in the financial statement tables included in this press release. An explanation of these measures is also included below under the heading "Non-GAAP Financial Measures."

"We are pleased with our ability to deliver strong top-line growth with a growing cloud and enterprise pipeline," said Karen L. Rosenberger, Chief Financial Officer and Treasurer. "We believe our ability to drive software growth, while investing in our enterprise and international initiatives, positions Synchronoss well heading into the fourth quarter and beyond."

**Third Quarter and Recent Business Highlights:**

- **Cloud Solution revenue:** $101.9 million of GAAP revenue, representing approximately 58% of total GAAP revenues and growing 34% on a year-over-year basis. $106.4 million of non-GAAP revenue, representing approximately 59% of total non-GAAP revenue and growing 40% year-over-year.

- **Activation Solution revenue:** $74.5 million of GAAP revenue for the third quarter, representing 42% of our total GAAP revenues and remained flat year-over-year. $74.6 million of non-GAAP revenue, representing approximately 41% of our total non-GAAP revenues and was down one percent year-over-year.

- Completed key cloud migrations at international customers such as Softbank, America Movil, and British Telecom as they move towards scaling our Personal Cloud Platform.

- Enterprise Secure Mobility Platform (SMP) had numerous customer wins and competitive displacements during the quarter across the healthcare, legal, and financial verticals.

- Our Verizon UID partnership is helping provide us with access to approximately one-third of the US consumer market and a host of large enterprise customers in this new market.

24.    On November 8, 2016 the Company filed its quarterly report on Form 10-Q for the 2016 fiscal third quarter.    The Form 10-Q was signed by Defendants Waldis and Rosenberger, and reaffirmed the financial results announced in the press release issued on November 7, 2016.

25.    On February 8, 2017, the Company issued a press release entitled "Synchronoss Technologies, Inc. Announces Fourth Quarter and Full Year Results."  Therein, the Company, in relevant part, stated:

> **BRIDGEWATER, NJ –February 8, 2017** – Synchronoss Technologies, Inc. (NASDAQ: SNCR), the leader in mobile cloud innovation for mobile carriers, enterprises, retailers and OEMs around the world, today announced financial results for the fourth quarter of 2016.

"Synchronoss has transformed its strategy with the Intralinks acquisition and divestiture of its traditional activation business as the company now looks to expand the scale and scope of its enterprise and cloud initiatives to drive the new SNCR 3.0 vision, said Ronald Hovsepian, Chief Executive Officer of Synchronoss." "The Synchronoss team is laying the foundation for the next chapter of growth," said Ronald Hovsepian, Chief Executive Officer of Synchronoss.

"It has been an exciting time here at Synchronoss over the past few months as we view the acquisition of Intralinks to be a major step forward in our enterprise strategy with Ron leading the team to successfully integrate both companies into a single portfolio", said Founder and Executive Chairman Stephen Waldis. "I look forward to working with Ron during this pivotal time for Synchronoss' employees, customers, and partners around the globe."

**Financial Highlights for the Fourth Quarter of 2016:**

- **Total revenues from continuing operations:** $121.7 million GAAP compared to $121.2 million in the fourth quarter of 2015. $123.9 million non-GAAP compared to $121.8 million in the fourth quarter of 2015. Total combined revenue from continuing and discontinued operations was $145.6 million. Non-GAAP combined total revenue from continuing and discontinued operations was $147.8 million.

- **Gross profit from continuing operations:** $71.5 million GAAP compared to $75.7 million in the fourth quarter of 2015. $78.1 million non-GAAP compared to $83.4 million in the fourth quarter of 2015.

- **Operating (loss) income from continuing operations:** $(30.4) million GAAP compared to $1.5 million in the fourth quarter of 2015. $13.1 million non-GAAP compared to $29.9 million in the fourth quarter of 2015.

- **Net (loss) income attributable to Synchronoss from continuing operations:** $(22.6) million GAAP compared to $(3.2) million in the fourth quarter of 2015. $11.0 million non-GAAP compared to $20.0 million in the fourth quarter of 2015.

- **Earnings (loss) per diluted share:** $(0.51) GAAP compared to $(0.07) in the fourth quarter of 2015. $0.24 non-GAAP compared to $0.43 in the fourth quarter of 2015.

- **Operating cash flow:** $86.0 million GAAP and non-GAAP compared to $63.2 million GAAP and non-GAAP in the fourth quarter of 2015.

**Financial Highlights for the Full Year 2016:**

- **Total revenues from continuing operations:** $476.7 million GAAP compared to $428.1 million in 2015. $490.2 million non-GAAP compared to $429.4 million in 2015.

- **Gross profit from continuing operations:** $282.5 million GAAP compared to $272.8 million in 2015. $319.2 million non-GAAP compared to $288.0 million in 2015.

- **Operating (loss) income from continuing operations:** $(71.9) million GAAP compared to $15.1 million in 2015. $82.0 million non-GAAP compared to $96.2 million in 2015.

- **Net (loss) income from continuing operations attributable to Synchronoss:** $(55.7) million GAAP compared to $1.3 million in 2015. $59.8 million non-GAAP compared to $63.6 million in 2015.

- **(Loss) earnings per diluted share from continuing operations:** $(1.28) GAAP compared to $0.03 in 2015. $1.28 non-GAAP compared to $1.38 in 2015.

- **Operating cash flow:** $142.5 million GAAP compared to $139.8 million in 2015. $142.5 million non-GAAP compared to $143.4 million in 2015.

A reconciliation of GAAP to non-GAAP results has been provided in the financial statement tables included in this press release. An explanation of these measures is also included below under the heading "Non-GAAP Financial Measures."

**Fourth Quarter and Recent Business Highlights:**

- GAAP Cloud Services revenue from continuing operations accounted for $121.7 million in the fourth quarter. Non-GAAP Cloud Services revenue from continuing operations accounted for $123.9 million in the fourth quarter. This was led by cloud deployments at new and existing customers.

- Completed the acquisition of Intralinks together with the closing of the $1.1 billion credit facility.

- Completed the divestiture of our carrier activation business to Sequential Technology International as well as the sale of our SpeechCycle and Mirapoint Software activation businesses.

- Strong progress at international customers in EMEA and APAC as they move towards scaling our Messaging and Personal Cloud Platforms.

26.     On February 8, 2017, the Company held a conference call to discuss its fiscal year 2016 financial results.  On the call, Defendant Rosenberger provided financial guidance for the

first quarter of 2017, which included some comments regarding Intralinks. She stated, in relevant part:

> Now, let me move to guidance for the first quarter and full year 2017 now with the Intralinks transaction closed. For 2017, non-GAAP revenues are expected to be in the range of $810 million to $820 million, unchanged from our initial guidance given on December 6 for the combined company.
>
> On a normalized basis, when adjusting for divestitures and the Intralinks acquisition, this would imply year-over-year growth of between 13% and 15%. The revenue mix in our guidance is expected to be roughly 65% of revenues derived from our cloud carrier-based business and 35% through our cloud enterprise business, which is primarily a subscription-based model.
>
> While we would like investors to use these ranges, the revenue mix and its timing could be impacted by the structure of certain large and complex opportunities. For the first quarter, we expect total revenues of between $173 million and $178 million.
>
> Turning to profitability, we currently expect non-GAAP gross margins of between 70% and 71% for the full year 2017. In terms of operating profitability, we are slightly widening the range to between 25% and 27% as we have identified some significant enterprise booking opportunities, which may require some upfront investments in the first half of this year.
>
> Including the impact from our $900 million debt raised in January with a better-than-expected interest rate, we are maintaining our non-GAAP EPS range of between $2.45 and $2.60 per share, assuming a tax rate of 30% on a diluted share count of approximately 50 million shares.
>
> Importantly, we also note that we are proceeding on target around realizing the $40 million in annual combined cost synergies first outlined when we discussed the deal. We expect integration and restructuring charges during the course of the year as we continue to execute on our synergy plan and will update investors on our next conference call.
>
> For the first quarter, we anticipate non-GAAP operating margin of between 18% and 20%. Non-GAAP EPS is expected to be in the range of $0.39 and $0.43 on a diluted share count of approximately 49 million shares, assuming a tax rate of 30%. We expect a restructuring charge of between $5 million and $10 million in the first quarter.

27.    On February 27, 2017 the Company filed its quarterly report on Form 10-K for the 2016 fiscal year. The Form 10-K was signed by Defendant Waldis, and reaffirmed the financial results announced in the press release issued on February 8, 2017.

28.     The above statements identified in ¶¶19-27 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.    Specifically, Defendants failed to disclose: (1) that the newly-acquired Intralinks was underperforming; (2) that the Company's integration of other acquisitions was underperforming; (3) that the Company was facing serious hurdles integrating, and capitalizing on, its newly acquired companies; (4) that, as such, the Company's guidance was overstated; and (5) that, as a result of the foregoing, Defendants' statements about Synchronoss' business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

29.     On April 27, 2017, the Company issued a press release entitled "Synchronoss Announces Management Changes; Company Issues Preliminary First Quarter 2017 Results." Therein, the Company disclosed that it expected "total revenue for the first quarter of 2017 to be $13 million to $14 million less than the company's previously announced guidance" and that it expected operating margins of 8% to 10% which was also less than previously announced guidance.    The Company stated that it was "disappointed with [its] Q1 performance in this first quarter following our acquisition of Intralinks."    The Company further disclosed that its Chief Executive Officer ("CEO"), Ronald Hovsepian, and its Chief Financial Officer ("CFO"), John Frederick were leaving the Company.    In greater part, the Company stated:

BRIDGEWATER, NJ — April 27, 2017 — Synchronoss Technologies, Inc. (NASDAQ: SNCR), the leader in mobile cloud innovation for mobile carriers, enterprises, retailers and OEMs around the world, today announced that company founder and Chairman of the Board of Directors Stephen Waldis will return to the role of Chief Executive Officer, effective immediately. Ronald Hovsepian, who previously served as Chief Executive Officer, will be leaving to pursue other interests. Mr. Hovsepian will serve as a consultant to the company to ensure a seamless transition.

Synchronoss also announced that Lawrence Irving has been named Chief Financial Officer.    Mr. Irving served as CFO for Synchronoss from July 2001 until April 2014 and played a crucial role in the company's development during that time. John Frederick, who served as Chief Financial Officer prior to Mr. Irving's appointment, will be leaving to pursue other interests.

Steve founded and led Synchronoss for 17 years and has a deep understanding of the carrier market, the company's SNCR 3.0 strategy and customers around the world. The Board of Directors has the utmost confidence in Steve and the executive leadership team to focus on execution, capitalize on the market opportunity for cloud solutions and services, successfully integrate the Intralinks enterprise acquisition, and drive Synchronoss to long-term profitable growth and sustainable cash flow. The Board of Directors thanks Ron and John for their service and wishes them the best in their future endeavors.

"I am incredibly passionate about Synchronoss," said Stephen Waldis, founder, chairman and chief executive officer. "I look forward to working with the entire team to drive success for our customers, partners, employees and shareholders. I am pleased that Larry is rejoining Synchronoss along with me. His extensive experience and deep knowledge of the company's business and financial underpinnings will be major assets to me and the management team."

**Preliminary First Quarter of 2017 Results**

Based on preliminary financial information, Synchronoss expects total revenue for the first quarter of 2017 to be $13 million to $14 million less than the company's previously announced guidance. Operating margins are expected to be 8% to 10%, which are less than previously announced guidance. First quarter of 2017 preliminary results are subject to change based on the completion of the company's quarter-end review process.

"With a track record of meeting or exceeding expectations, we are of course disappointed with our Q1 performance in this first quarter following our acquisition of Intralinks," said Mr. Waldis. "In view of the Company's performance in the first quarter, we expect this will impact our full year guidance. We intend to manage our expenses in line with our revenues to generate strong cash flow for the year. We continue to believe in our long-term strategic vision, while executing on our combined synergies. We remain confident in our long-term growth opportunities and strong relationships with our customers, and we are committed to delivering strong returns to our shareholders. We will share additional information, including updated full year guidance, on our May 9th earnings call."

30.    On this news, the Company's stock price fell $11.33 per share, or 46%, to close at $13.29 per share on April 27, 2017, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

31.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Synchronoss' securities between May 5, 2016, and April 27, 2017, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and

directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

32.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Synchronoss' common stock actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Synchronoss shares were traded publicly during the Class Period on the NASDAQ.  As of February 16, 2017, Synchronoss had 45,998,579 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Synchronoss or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Synchronoss; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

36.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

37.    The market for Synchronoss' securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Synchronoss' securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Synchronoss' securities relying upon the integrity of the market price of the Company's securities and market information relating to Synchronoss, and have been damaged thereby.

38.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Synchronoss' securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Synchronoss' business, operations, and prospects as alleged herein.

39.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Synchronoss' financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant

times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

40.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.    During the Class Period, Plaintiff and the Class purchased Synchronoss' securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Synchronoss, their control over, and/or receipt and/or modification of Synchronoss' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Synchronoss, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

43.    The market for Synchronoss' securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures

to disclose, Synchronoss' securities traded at artificially inflated prices during the Class Period. On November 28, 2016, the Company's stock price closed at a Class Period adjusted high of $49.53 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Synchronoss' securities and market information relating to Synchronoss, and have been damaged thereby.

44. During the Class Period, the artificial inflation of Synchronoss' stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Synchronoss' business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Synchronoss and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45. At all relevant times, the market for Synchronoss' securities was an efficient market for the following reasons, among others:

(a)    Synchronoss stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Synchronoss filed periodic public reports with the SEC and/or the NASDAQ;

(c)    Synchronoss regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Synchronoss was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and

certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

46. As a result of the foregoing, the market for Synchronoss' securities promptly digested current information regarding Synchronoss from all publicly available sources and reflected such information in Synchronoss' stock price. Under these circumstances, all purchasers of Synchronoss' securities during the Class Period suffered similar injury through their purchase of Synchronoss' securities at artificially inflated prices and a presumption of reliance applies.

47. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

48. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-

looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Synchronoss who knew that the statement was false when made.

**COUNT I**
**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

49.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Synchronoss' securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

51.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Synchronoss' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Synchronoss' financial well-being and prospects, as specified herein.

53.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a

course of conduct as alleged herein in an effort to assure investors of Synchronoss' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Synchronoss and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

54.   Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

55.   Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Synchronoss' financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.   As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they

did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Synchronoss' securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Synchronoss' securities during the Class Period at artificially high prices and were damaged thereby.

57.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Synchronoss was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Synchronoss securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**COUNT II**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

60.    Plaintiff repeats and realleges each and every allegation contained above as if

fully set forth herein.

61.     Individual Defendants acted as controlling persons of Synchronoss within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Synchronoss and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays judgment as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class

members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  May 2, 2017

**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO P.C.**

*/s/ James E. Cecchi*
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ  07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com
decklund@carellabyrne.com

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867